IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JERRY SMITH, *et al.* ) | |
| ) | |
|     Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 3:08-549 |
| ) | Judge Trauger |
| MPIRE HOLDINGS, LLC, *et al.*, ) | |
| ) | |
|     Defendants. ) | |
| ) | |

## MEMORANDUM

Pending before the court is Magistrate Judge Bryant's Report and Recommendation (R&R) (Docket No. 342), which recommends granting two Motions for Default Judgment filed by the plaintiffs, Jerry and Deborah Smith. The first motion (Docket No. 308) seeks a FRCP 55(b) default judgment against MPIRE Holdings, LLC and The Momentum Group (the "Entity Defendants"), in light of the fact that FRCP Rule 55(a) default had been previously entered against these defendants. The Entity Defendants did not oppose the motion or object to the R&R. Therefore, the court will adopt the R&R as to the Entity Defendants. The second motion (Docket No. 309) seeks a default judgment as a FRCP 37 discovery sanction against individual defendants Mark, Greg, and Mike Manuel. The Manuels did not respond to this motion, but they did each object to the R&R. (*See* Docket Nos. 352-354.)

## BACKGROUND

On May 30, 2008, the plaintiffs filed this lawsuit against the Manuels and the Entity

1

Defendants, alleging that the Manuels and the entities that they controlled had, as Judge Bryant put it, "fraudulently induced plaintiffs to invest $200,000 in a bogus investment scheme through false promises and intentional misrepresentations." (Docket No. 342 at 2.) The plaintiffs, who only received $13,000 of their investment back, asserted various federal and state claims. (*See id*.) The Manuel defendants, proceeding *pro se*, each filed an Answer, denying all pertinent allegations on July 7, 2008. (See Docket Nos. 12-14.)

On July 25, 2008, the plaintiffs moved for (and the Clerk subsequently entered) Rule 55(a) default against the Entity Defendants, who had been served but had not answered the Complaint. (Docket Nos. 17, 21.) That same day, the plaintiffs moved for a preliminary injunction, seeking to freeze certain Manuel defendants' assets during this litigation. (Docket No. 18.) The Manuel defendants did not respond to the motion or attend the February 25, 2009 hearing on the motion.

On March 9, 2009, Judge Bryant issued a Report and Recommendation that recommended denying the motion for preliminary injunction. (Docket No. 30.) While the plaintiffs had shown that they were likely "bilked" out of $187,000 through a fraudulent investment scheme, Judge Bryant concluded that they had offered "meager" evidence that the Manuels were responsible for the losses. (*Id*. at 11.) Judge Bryant stressed that the "remarkable lack of evidence" and the "many unanswered questions" in the case were due to the plaintiffs' failure to take discovery. (*Id*. at 12-13.) The plaintiffs filed objections to this R&R, which this court overruled. (Docket No. 34.)

In May 2009, the plaintiffs, finally initiating discovery, noticed the Manuel defendants'

2

depositions and directed them to bring certain documents to their depositions. (Docket Nos. 53-55.) After some difficulty finding an agreeable date for the depositions, the depositions were set for July 15th, 16th, and 17th at a court reporter's office in Nashville, Tennessee, with the depositions of Mike, Greg, and Mark Manuel (respectively) set to begin at 9 a.m. each day and to take the maximum seven hours. (*See* Docket No. 138.)

The depositions did not go smoothly. Mike Manuel (along with Mark and Greg) appeared on July 15, 2009 at 9 a.m, but they all left a few minutes after 9 a.m., when plaintiffs' out-of-state counsel, Bruce Griffey, who had received "bad directions," had not arrived. (*See id.* at 8-10.) According to Griffey, he was in regular contact with the court reporter's office before 9 a.m., obtaining directions and confirming that he would be there shortly. (*Id.*) Griffey arrived at 9:06 a.m., only to be informed by the court reporter that three men (the Manuels) had arrived at 9 a.m., refused to identify themselves, were informed that Griffey was on his way, but refused to wait and left at 9:03 a.m. (*Id.*) Griffey spent the day attempting to contact the Manuels by phone and e-mail, before finally filing an Emergency Motion with the court in an attempt to get the deposition immediately reset. (*Id.*)

On July 16, 2009, Greg Manuel appeared for his deposition, but, the plaintiffs claim, he was uncooperative, refusing to "provide any identification" or to "allow the court reporter to administer the traditional oath to him or to affirm that the testimony he provided during the course of the deposition would be the truth subject to the penalties of perjury." (*Id*. at 11.) Greg Manuel also repeatedly referred to himself as a "secured creditor of Greg Manuel." (*Id*.) In light of all this, two hours after the deposition was supposed to begin, Griffey contacted

3

Magistrate Judge Griffin, and, after discussion with the parties, Judge Griffin was able to confirm that Greg Manuel was the deponent, he had been placed under oath, and that he was required to provide identification and answer Griffey's questions. (*See* Docket No. 105.) Two hours later, Greg Manuel requested a "recess for the day." (Docket No. 138 at 11.) Griffey agreed to recess so long as Greg Manuel agreed to finish the deposition the next day (after Mark Manuel's deposition) and agreed to pay the overtime costs for the court reporter and videographer, which he agreed to do. (*Id*. at 11-12.)

On July 17, 2009, Mark Manuel appeared for his deposition, but, according to the plaintiffs, engaged in similar conduct, refusing to identify himself or to pledge to tell the truth, and claiming to be a "secured creditor." (*Id*. at 12-13.) Once again, Judge Griffin was called; she was able to confirm that the deponent was indeed Mark Manuel, and she directed him to answer counsel's questions. (Docket No. 105.) In light of all this, the deposition did not get underway until about 1:30 p.m., and Griffey claims that Mark Manuel spent much of the remaining time "playing games," refusing to directly answer questions, and otherwise delaying.[1] (Docket No. 138 at 13.) In the late afternoon of the 17th, Greg Manuel e-mailed Griffey to advise that he would not be appearing for the continuation of his deposition in light of "medical problems." (*Id*. at 11-12.) Not surprisingly, the defendants did not provide any documents in conjunction with their depositions. (*Id.* at 14-15.)

On September 2, 2009, the plaintiffs filed a Motion to Compel, seeking monetary

---

[1]For instance, when Mark Manuel was asked where he lived, he responded "in his body." (*See id.*)

4

sanctions for the defendants' conduct, including the cost of traveling to Nashville for the depositions and attorneys' fees. (*Id.* at 23.) The plaintiffs also sought an Order directing the Manuel defendants to submit to continued depositions and to produce documents responsive to the plaintiffs' previous requests. (*Id.* at 24-25.) The same day, the plaintiffs also filed a Motion to Compel the Manuel defendants to provide their federal tax returns from 2005 forward, as previously requested. (Docket No. 136.) Despite contemporaneously filing dozens of nonsensical "notices" seeking billions of dollars in damages from the plaintiffs, the Manuel defendants did not respond to these motions.

On February 22, 2010, Magistrate Judge Bryant granted the Motion to Compel the tax returns and ordered the Manuel defendants to provide the returns or an authorization to obtain them by March 3, 2010. (Docket No. 199.) No tax returns were provided, and, on June 1, 2010, Judge Bryant issued an Order setting a status conference for June 15, 2010, and he directed the Manuel defendants to contact his chambers with a phone number by which they could be reached on June 15. (Docket No. 236.) The Manuel defendants did not call chambers, and the June 15 status conference (in which new discovery deadlines and a trial date were set) was conducted without the defendants. (Docket No. 244.)

On August 11, 2010, Judge Bryant granted the September 2, 2009 Motion to Compel, ordering the Manuel defendants to pay just over $11,000 as a monetary sanction related to their conduct in discovery to this point. He further ordered the Manuel defendants to produce the documents requested in the deposition notices by August 31, 2010 and to appear for deposition (or continued deposition) by September 15, 2010. (Docket No. 278 at 6.) Judge Bryant

5

admonished the defendants that "their failure to comply with this order may subject them to additional sanctions, including but not limited to entry of judgment by default." (*Id.*)

None of the dictates of the August 11, 2010 Order were complied with, and, on January 7, 2011, the plaintiffs moved for a default judgment against the Manuel defendants and against the Entity Defendants, as discussed above. (Docket Nos. 308-309.) On August 30, 2011, Judge Bryant issued the pending R&R, recommending that a default judgment be entered against all defendants. The Manuel defendants filed their timely objections on September 16, 2011. (Docket Nos. 352-354.)

## **ANALYSIS**

**I.      Standard of Review**

When a Magistrate Judge issues a report and recommendation regarding a dispositive pretrial matter, the district court must review *de novo* any portion of the report and recommendation to which a party specifically objects. Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(C). Given the nature of the objections filed, this court will review the entire Magistrate Judge's R&R *de novo*.

Here, the Magistrate Judge has recommended that a default judgment be entered against the Manuel defendants for "failing to comply with a court order requiring discovery." (Docket No. 342 at 1.) Federal Rule of Civil Procedure 37(b)(2)(A) lists several potential sanctions for discovery abuses, affording the court the option to strike pleadings, prohibit certain evidence, dismiss the case, or enter a default judgment against the disobedient party.

In determining the scope of the sanction, the Sixth Circuit has directed district courts to consider (1) "whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault," (2) whether the adversary has been prejudiced, (3) whether the disobedient party "was warned that failure to cooperate could lead to the sanction," and (4) whether less drastic sanctions were first imposed or considered. *Freeland v. Amigo*, 103 F.3d 1271, 1277 (6th Cir. 1997). "Willfulness, bad faith, or fault" can only be found where the party to be sanctioned had displayed "an intent to thwart judicial proceedings or a reckless disregard for the effect of his conduct on those proceedings." *Schafer v. City of Defiance Police Dept.*, 529 F.3d 731, 737 (6th Cir. 2008)(internal quotation omitted).

The Sixth Circuit has noted that "a district judge holds a variety of sanctions in his arsenal, the most severe of which is the power to issue a default judgment." *Grange Mut. Cas. Co. v. Mack*, 270 Fed. Appx. 372, 376 (6th Cir. 2008)(referring to the default judgment sanction as the court's "strongest weapon"). Before dismissing a case brought by a disobedient plaintiff or issuing a default judgment against a disobedient defendant, the court must recognize that these are "sanction[s] of last resort," and the court must consider whether such a sanction appropriately punishes the offending party and sensibly deters similar misconduct by future litigants. *Peltz v. Moretti*, 292 Fed. Appx. 475, 478 (6th Cir. 2008)(internal quotation omitted). Indeed, without a clear showing of "willfulness, bad faith, or fault," by the defendant, entry of a default judgment against the defendant in this context is not appropriate. *Id.* That is, an entry of default should be avoided unless the record clearly shows continuous delay or "contumacious conduct by the offending party." *Am. Book Co. v. Consolidated Group of Companies*, 2011 WL

1457686, *4 (E.D. Tenn. Apr. 15, 2011)(internal quotation omitted).

II.     **The R&R**

After recommending that judgment by default be entered against the Entity Defendants for failing to appear, Judge Bryant turned to the Manuels. (Docket No. 342 at 2.) He recounted "their persistent failure to obey court orders requiring them to make discovery," including their failure to comply with the February 22, 2010 Order to produce their tax returns, their failure to contact the court in advance of the June 15, 2010 status conference, their "misbehavior" during the depositions, and their failure to comply, in any respect, with the August 11, 2010 Order, even though that Order warned of the potential for a default judgment sanction. (*Id*. at 2-6.)

Judge Bryant stressed that (1) the Manuel defendants never produced a document in discovery, (2) made a mockery of their depositions, (3) repeatedly ignored court orders, and, (4) "more recently . . . failed to accept mail from the Clerk's office regarding this case." (*Id*. at 7.) While recognizing that judgment by default is a severe and drastic sanction, after considering the four factors discussed above, Judge Bryant concluded that this case warranted that sanction. (*Id*.)

In considering the damages to be awarded, Judge Bryant noted that, in support of their motion for default, the plaintiffs had filed broad requests for admission that they claimed to have served on the defendants but that were never responded to. (*Id*. at 7.) Given that the failure to respond to a request for admission concedes the request, Judge Bryant concluded that the Manuel defendants' had, in essence, conceded that they had defrauded the plaintiffs of $187,000. (*Id*. at 9.) He, therefore, recommended awarding the plaintiffs $187,000 plus undetermined pre-

judgment interest, "reasonable" attorney's fees, and costs. (*Id*.) Judge Bryant recommended entering this judgment, jointly and severally, against all defendants. (*Id*.)

III. **The Objections**

The Manuel defendants filed three, substantially identical, Objections. Portions of the Objections are bizarre, such as where the Manuel defendants claim that they are "not appearing generally before this court seeking a remedy in Admiralty as is provided by the 'Saving to the Suitors Clause,'" and where they claim to be "secured party creditors." (Docket No. 352-354 at 1.)

The Manuel defendants do however, in reasonably clear fashion, challenge the R&R, paragraph by paragraph. Repeatedly citing to their "knowledge and belief," they maintain that they (1) received no "due process" regarding the Motion for Default Judgment and have not received many of the documents purportedly served by plaintiffs' counsel, (2) have "met all requirements" related to discovery to the "best" of their abilities, (3) did not receive some of the court Orders, (4) do not have any relevant documents, (5) did not "misbehave" during their depositions, as Greg Manuel really was sick on the afternoon of July 17th and they simply objected, on religious grounds, to "swearing" an oath, (6) have not received subsequent notifications to continue their depositions, and (7) do not have the money to pay the monetary sanctions previously ordered. (*See generally* Docket Nos. 352-354 at 2-6.)

The Manuel defendants generally deny acting in bad faith or intending to prejudice the plaintiffs. (*Id*. at 6-7.) Further, they contend that they never received the requests for admission discussed in the R&R, and, in the Objections, they deny the requests cited in the R&R. (*Id*. at 7-

9

9.) They (clearly incorrectly) argue that default judgment can only be entered under FRCP Rule 55 and insist that this entire proceeding has denied them due process and that they have been severely prejudiced by the lack of counsel. (*Id*. at 9-11.) Further, the Manuel defendants state that this action should be dismissed in light of the "incredible lack of evidence that provoked the denial of the injunction sought at the beginning of this case," plaintiffs' counsel's alleged "abuse of process," and the "inordinate periods of inactivity" in this case. (*Id*. at 11.) Finally, the Manuel defendants insist that they had no relationship with the plaintiffs and that the plaintiffs have already reached a "settlement agreement" with the "entity to which plaintiffs agree they were defrauded." (*Id*.)

IV. **Resolution**

The court concurs with the Magistrate Judge that a default judgment against the Manuel defendants as a discovery sanction is appropriate in this case. This sanction would likely be appropriate in light of the Manuel defendants' conduct during their depositions alone. As clearly shown in the record, the defendants engaged in classic and incredibly "contumacious" conduct during the entire course of their depositions, engaging in juvenile and disrespectful behavior that not only thwarted the fact finding process but wasted the time and energy of all involved, including the court, which was called in to resolve matters related to all three days of testimony.

Here, however, the misconduct extends far beyond the depositions. The defendants did not comply with three separate orders of the court and have utterly failed to engage in any discovery with the plaintiffs. When presented with these facts here, the defendants object with platitudes that they have complied with discovery to the "best of their ability" as far as they

know and claim that they did not receive the discovery propounded or certain court orders. First, it is the defendants' obligation to keep the court and the plaintiffs aware of their contact information. Second, the record does not reflect (and the court simply does not believe there was) any sort of wholesale failure of service. Rather, the record indicates that the defendants (as here) only responded to missives from the court or the other side when they felt it was in their immediate interest to do so. That is, in the court's view, the defendants "got what they wanted to get."[2]

Again, while judgment by default as a discovery sanction is a drastic remedy, this case easily satisfies the four-factor test. First, from the deposition conduct and beyond the defendants have shown textbook bad faith. Second, as was made clear in Judge Bryant's March 2009 R&R, discovery was vital to the fact-finding process in this case, and the plaintiffs are obviously prejudiced by the defendants' failure to engage in discovery at all. Third, Judge Bryant clearly warned the defendants that future misconduct could result in the sanction of default judgment. And, finally, lesser sanctions had been considered, and, indeed, imposed. In light of the

---

[2]Court orders are sent to the parties by regular and certified mail. As to the court's orders at issue here, the February 22, 2010 certified mailing went "unclaimed" by all three Manuel defendants, but there is no indication that the regular mail was returned as undeliverable. (Docket Nos. 222, 223, and 225.) The June 1, 2010 certified mailing was received by Mike Manuel (Docket No. 243) and "unclaimed" by Greg Manuel (Docket No. 252), with no evidence that the regular mail was returned. Both June 1 mailings to Mark Manuel were returned as undeliverable. (Docket Nos. 238 and 240.) The August 11, 2010 certified mailings to Greg and Mike Manuel were "unclaimed" with no evidence that the regular mail was returned. (Docket Nos. 298 and 300.) These mailings to Mark Manuel were again returned as undeliverable (Docket Nos. 287 and 295), but, again, it was Mark Manuel's responsibility to keep the court apprised of any address changes, and similar treatment of the R&R did not prevent Mark Manuel from filing objections here. (Docket Nos. 345 and 348.)

defendants' conduct, it is not possible for the court to conceive of any other fair way to bring this matter to a close other than through the entry of a default judgment.

## **CONCLUSION**

The court concurs with the Magistrate Judge that a default judgment of $187,000 should be entered against the Entity Defendants and the Manuel Defendants, jointly and severally. The court will refer this case back to the Magistrate Judge to consider the specific amount of interest, costs, and attorney's fees to be awarded.

An appropriate Order will enter.

_____
ALETA A. TRAUGER
U.S. District Court Judge